UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| IN RE CYBERONICS INC. | § § | CIVIL ACTION H-05-2121 |
| SECURITIES LITIGATION | § § |  |

**MEMORANDUM OPINION**

This is a securities fraud class action[1] brought pursuant to the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u-4. On September 28, 2007, the court granted with prejudice defendants' motion to dismiss plaintiffs' supplemented first amended complaint ("SFAC"). Dkt.61. Pursuant to that order, the court issues this memorandum opinion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

The consolidated cases constitute a putative securities fraud class action involving the stock of defendant Cyberonics, Inc. Dkts. 8 & 86. The putative class consists of all purchasers of Cyberonics securities between February 2, 2004 and August 1, 2006 (the "class period").[2] Dkt. 97, ¶ 239. Defendants are Cyberonics and certain Cyberonics class-period senior officers and directors

---

[1] Although a lead plaintiff has been appointed by the court, no class has been certified under Rule 23 in this matter. Dkt. 8 & 86.

[2] The court refers to this as the "class period," although no class has been certified. *See Nathenson v. Zonagen Inc.*, 267 F.3d 400, 404 (5th Cir. 2001) (noting similarly that, "[d]espite the absence of certification, we will, for clarity's sake, refer to the time in question as the 'class period'").

(collectively "Defendants").[3] Cyberonics is a Delaware corporation with its principal place of business in Houston, Texas.

The lawsuit arises out of Cyberonics' efforts to secure approval from the FDA for marketing a device for the treatment of depression—and subsequent events related thereto—as well as certain accounting irregularities. Plaintiffs filed their initial actions on June 17, 2005, before formal FDA approval for the device was issued. The consolidated complaint was filed on November 30, 2005, asserting claims under sections 10(b) and 20(a) of the Exchange Act, and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. 17. Dkt. 27. On July 20, 2006, the court dismissed the lawsuit for failure to plead with the specificity required by both Rule 9(b) of the Rules of Civil Procedure and Sections 78u-4(b)(1)-(2) of the PSLRA. Dkt. # 51. Contemporaneously however, the court granted the lead plaintiff, Cyberonics Investor Group ("CIG"),[4] permission to amend its complaint to cure the deficiencies. *Id.* On August 17, 2006, CIG filed an amended complaint that expanded the class period to the time between February 5, 2004 and August 1, 2006, and added new claims.[5] Dkt. # 54. Thereafter, a non-party Cyberonics investor, the Los Angeles County Employees Retirement Association ("LACERA"), moved the court to stay the suit and order CIG to republish notice of the lawsuit pursuant to section 78u-4(a)(3)(A) of the PSLRA notifying

---

[3] Individuals named as defendants are Robert P. Cummins, Chairman and CEO; Richard L. Rudolph, Vice President of Clinical and Medical Affairs; Alan Totah, Vice President of Regulatory Affairs; Michael A. Cheney, Vice President of Marketing; W. Steven Jennings, Vice President of Sales; and Pamela B. Westbrook, CFO and Vice President of Finance and Administration. Dkt. 97, ¶¶ 34-41.

[4] CIG is comprised of EFCAT, Inc., John E. & Cecilia Catogas, Blanca Rodriguez, and Mohamed Bakry Dkt. 97, ¶ 33. For details of plaintiffs' purchases and sales of Cyberonics stock, *see* Dkt 54 pp. 120-23.

[5] The original class period was June 15, 2004 through October 1, 2004. Dkt. 27.

any other potential plaintiffs of the expanded class period and new claims asserted. *See In re Cyberonics Inc. Securities Litig.*, 468 F.Supp.2d 936 (S.D.Tex. Nov 28, 2006); Dkt. 83. After republication, no new plaintiffs joined the suit. And, the court subsequently reaffirmed CIG as lead plaintiff on February 21, 2007. Dkt. 86. On April 19, 2007, the court denied plaintiffs' motion for leave to file a second amended consolidated class action complaint and stayed the case pending the United States Supreme Court's disposition of *Tellabs, Inc. v. Makor Issues and Rights, Ltd.*, 127 S. Ct. 2499 (2007). Dkt. 91 After the Supreme Court issued its opinion in *Tellabs*, this court lifted the stay on June 25, 2007 and authorized plaintiffs to supplement—but not amend—their first amended complaint. Dkt. 95. Plaintiffs filed their SFAC on July, 16, 2007. Dkt. 97. Defendants responded with their supplement to their motion to dismiss plaintiffs' first amended complaint on August 8, 2007. Dkt. 99.

**A.     Cyberonics Incorporated**

Cyberonics manufactures and sells the Vagus Nerve Stimulation Therapy System ("VNS Device"). The FDA approved the device in 1997 for the treatment of epilepsy. The device has also received regulatory approval in the European Union, Canada, Australia, and other countries. In 1998, Cyberonics began to explore the use of the VNS Device to treat chronic depression, also known as treatment-resistant depression ("TRD"). In 2001, Cyberonics received regulatory approval from the European Union and Canada to market the VNS Device for the treatment of TRD. In October 2003, Cyberonics filed a Premarket Approval Supplement application ("PMA-S")[6] with the

---

[6]A PMA Supplement is a supplemental application to a previously approved PMA for approval of a change or modification in a class III medical device, including all information submitted with or incorporated by reference. After approval of the original PMA, an applicant may submit a PMA Supplement addressing a new use of the device for review and approval by the FDA.

FDA, seeking approval to market the VNS Device in the United States for the treatment of TRD. On February 2, 2005, the FDA issued an "approvable letter" for the use of the VNS device in the treatment of TRD and formally approved the VNS Device for that indication on July 15, 2005. Dkt.97,¶¶ 19(g), 24.  However, based on relatively "weak" scientific evidence of the VNS device's success in treating TRD, payer approval for the device—insurance companies authorizing the use of the device for that specific treatment—was not forthcoming, negatively impacting the company's stock price. Dkt. 97 ¶ 82.

**B.     The Claims**

The plaintiffs' claims fall into two categories: (1) original claims from the consolidated complaint, and (2) claims added in the SFAC.

1.     <u>Original Claims</u>

In the consolidated complaint plaintiffs alleged that defendants made false and misleading statements during the class period regarding (1) the approvability of the device for the treatment of TRD, (2) the status and details of the FDA approval process, (3) issues with its scientific data, and (4) the likelihood of payer approval.  Plaintiffs' SFAC fails to cure any of the deficiencies from which their original complaint suffered with regard to the particularity required for pleading misstatements, omissions, scienter and loss causation.  Any additional allegations raised by the plaintiffs in the SFAC regarding payer responses are counter-balanced by the fact that the company routinely and continuously during the class period warned its investors that payer approval for the VNS Device's new application was not guaranteed.  The court has already addressed and dismissed the substantive issues in the approvability matter in great detail in its order dated July 18, 2006. Dkt. 51.  And, plaintiffs have offered nothing to change the court's earlier findings.  Therefore, the

question before the court is whether the newly-introduced allegations of securities fraud related to the back-dating of options and resulting falsification of financial statements have been pled sufficiently to save the plaintiffs' SFAC from dismissal. Accordingly, the court will restrict its discussion to these allegations.

    2.    <u>Claims Added in the SFAC</u>

On November 18, 2006, certain material errors prompted Cyberonics "to restate its historical financial statements to record non-cash charges for compensation expense relating to past stock options grants." Dkt.99, Ex. C at 6. The restatements covered fiscal years 1994 through 2006.[7] *Id.* Plaintiffs also contend that the individual defendants—because of their executive positions—were responsible for the restatements due to their involvement in the granting and pricing of these options. Dkt. 97 ¶ 10.

**II.**    **DISCUSSION**

Plaintiffs assert two causes of action in their SFAC. First, plaintiffs claim that all defendants violated section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder by carrying out a plan, scheme and course of conduct— during as well as outside the class period—to manipulate the company's financial statements by not properly accounting for executive stock options granted to the individual defendants. They allege that these statements were intended to and did deceive the investing public, artificially inflated the price of Cyberonics securities, and caused plaintiffs to purchase those securities at artificially inflated prices. Second, plaintiffs assert

---

[7] As the company noted, however, the largest restatement was regarding options granted during 1998-2003—outside the class period. *Id.* Nonetheless, the court takes note that Cyberonics' fiscal year 2005 does not equate to calendar year 2005, and therefore incorporates the option grant date of June 15, 2004 into the $6.49 million non-cash restatement for Fiscal 2005. Dkt 99, Ex. C at 7.

that the individual defendants violated section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). The individually named defendants were controlling persons at Cyberonics who knew about the false accounting and aided and abetted the company's violation of section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder.

Defendants seek dismissal of all claims against them pursuant to rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. They argue that the standards imposed by the PSLRA and rules 9(b) and 12(b)(6) entitle them to dismissal of the securities fraud claims against them, because plaintiffs did not plead their claims with the particularity required by the PSLRA. Dkt. 61. In addition, defendants contend that plaintiffs violated court orders by filing an amended complaint and not a supplement as ordered by the court. Dkt.99. In response, plaintiffs submit that they have properly alleged claims under sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5.

**A.     Standard of Review**

1.     Rules 12(b)(6) & 9(b)

In considering 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (internal citations omitted). However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (supporting facts must be

plausible—enough to raise a reasonable expectation). In addition to the factual allegations, a court may take judicial notice of documents of public record, such as documents filed with the SEC, and may consider such documents in determining a motion to dismiss. *See R2 Investments LDC v. Phillips*, 401 F.3d 638, 640 n.2 (5th Cir. 2005) (citing *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

To avoid dismissal, fraud claims under section 10(b) of the Exchange Act must also satisfy the heightened pleading requirements imposed by Rule 9(b) and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u (1995) ("PSLRA"). *Tellabs, Inc. v. Makor Issues & Rights*, 127 S. Ct. 2499, 1504 (2007). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). "To satisfy Rule 9(b)'s pleading requirements, a plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir.1997)). Furthermore, "[a]s set out in § 21D(b)(2) of the PSLRA, plaintiffs must 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Tellabs*, 127 S. Ct. at 2504 (quoting 15 U.S.C. § 78u-4(b)(2)).

    2.    <u>Private Securities Litigation Reform Act</u>

Section 10(b) makes it illegal for a person to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of the SEC's rules. To state a claim under section 10(b) and Rule 10b-5, "a plaintiff must allege, in connection with the purchase or sale of securities (1) a misstatement or an omission (2) of material

fact (3) made with scienter (4) on which plaintiff relied (5) that proximately [injured him]." *Fin. Acquisition Partners L.P. v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). Because the court finds that the plaintiffs have failed to plead sufficient facts to give rise to a strong inference of scienter, it will focus on this aspect of the 10(b) inquiry.

        3.        <u>Scienter Under the PSLRA</u>

Under the PSLRA, plaintiffs must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *see also R2 Investments LDC v. Phillips*, 401 F.3d 638, 640, 641-42 (5th Cir. 2005). Further, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

The Fifth Circuit has defined scienter as an "intent to deceive, manipulate, or defraud or that severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Southland*, 365 F.3d at 366 (internal citations, quotations and ellipsis omitted). Severe recklessness is "limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care." *Broad v. Rockwell Int'l Corp.*, 642 F.2d 929, 961-62 (5th Cir. 1981).

The Act requires not only an inference of scienter, but a *strong* inference of scienter. Congress intentionally set exacting standards to curb abusive litigation. *See Tellabs*, 127 S. Ct. at 2504. In *Tellabs*, the court explained that a strong inference of scienter is one where the "inference

of scienter [is] more than merely plausible or reasonable—it [is] cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 2504-05. The court should ask whether—accepting the allegations in the complaint as true and assessing them holistically rather than in isolation—"a reasonable person [would] deem the inference of scienter at least as strong as any opposing inference." *Id.* at 2511. That is not to say that the plaintiffs bear the burden at this point to show scienter by a preponderance of the evidence, but "must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference." *Id.* at 2513 (emphasis in original). However, the plaintiffs may present circumstantial evidence of scienter to fulfill their obligation. *Central Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, __F.3d__, 2007 WL 2367776, *3 (5th Cir. 2007).

**B.    Analysis**

Plaintiffs present in detail Cyberonics' 1994-2006 GAAP violations, lax control and procedures, and public pronouncements.

1.    <u>GAAP Violations</u>

The plaintiffs point to various ways in which the defendants allegedly falsified their financial statements in violation of GAAP. Plaintiffs allege that Cyberonics falsely recorded the dates of the consent of the compensation committee to show stock option grants as occurring a day earlier. Dkt. 97 ¶ 71. However, Cyberonics argues that because stock option grants required unanimous consent of the committee members, many of whom would have been sent the consent forms by overnight delivery, the "date of effective approval . . . was subsequent to the grant date." *Id.* at ¶ 69. Also, plaintiffs argue that Cyberonics did not use the proper accounting method as required for the repricing of stock options. *Id.* at ¶ 73. This repricing violated GAAP because stock options must

be recorded using variable accounting.  *Id.*  While the option-backdating and the subsequent restatement do indeed provide some circumstantial evidence from which to infer scienter, "GAAP violations without more, do not establish scienter."  *Central Laborers'*, 2007 WL 2367776 at *4 (citing *Barrie v. Intervoice-Brite, Inc.*,  397 F.3d 249, 263-4 (5th Cir. 2005)).

As proof of scienter, the plaintiffs argue that the individual defendants must have known about the back-dating because their compensation was dramatically increased as a result.  Moreover, the plaintiffs point to the allegedly "noisy resignation" of Ronald Matricaria, Cyberonics Board Director and Chairman of the Board's Compensation Committee as "an early signal of internal disagreements involving the acts and motivations of defendants as to compensation and governance issues."  Dkt. 97 ¶ 211.  And, the plaintiffs argue that the "forced resignations" of Cyberonics' CEO, Robert "Skip" Cummins, and CFO, Pamela Westbrook in an effort to "instill accountability, improve corporate governance and reestablish [Cyberonics'] credibility" also give rise to a strong inference of scienter.  *Id.* at ¶ 190.  Taken holistically these allegations cannot support an inference that is at least as likely as the plausible non-culpable opposing inferences.  Matricaria's resignation email clearly lists his reasons for resigning.  *Id.* at ¶ 153.  He states that he "unfortunately cannot support the direction of the governance practices of the Cyberonics board, in particular its practices regarding CEO compensation and succession."  *Id.*  His given reason is a perfectly legitimate "political" reason to resign.  And although he had every opportunity to do so, Matricaria did not mention the stock options and stock sales in his email.[8]  The "forced resignations" of Cyberonics' CEO and CFO in

---

[8] Plaintiffs argue that since Matricaria sent his letter to David Wise—Vice President and General Counsel of Cyberonics—rather than to Skip Cummins—the CEO—it is clear that he had problems with Cummins.  Dkt. 97 ¶ 154.  However, if Matricaria were actually so angry with Cummins about the stock awards and sales that he felt he had to resign, then there is no reason he would not have simply said so in his resignation email to Wise.  It is significantly more likely that

conjunction with Cyberonics' new policies regarding stock options do suggest a connection between the two. However, the inference is simply not strong enough to satisfy the PSLRA's standards. The basic premise is flawed, because there is no evidence in the record that the resignations were indeed forced. The resignations and new policies certainly signaled a change in direction for the company. But, the new direction could be predicated on many bases. The resignation agreements with the CEO and CFO contain no particularized details that would support a strong inference of scienter. Moreover, the Chairman of Cyberonics' Board spoke well of both people and went so far as to retain the CFO as a consultant for the company. Dkt. 99, Ex. J. If these were "forced resignations" based on fraudulent conduct, the opposing inference that the CEO and CFO would be summarily fired, and certainly not retained as consultants, is the much stronger inference.

    2.    <u>The Stock Sales</u>

The same is true of the allegations that defendants sold their stock options based on inside information for an inflated price. As noted by the Fifth Circuit, insider trading can only be a strong enhancement of an inference of scienter— not an inference by itself—if the trading occurs at suspicious times or in suspicious amounts. *Central Laborers'*, 2007 WL 2367776 at *5. The SFAC does not tie the stock sales to any specific allegation of timing or amount that would give rise to a strong inference of scienter. They argue that in February of 2005, the company reported that the FDA had found the VNS Device to be approvable, and as a result the stock price rose. Dkt. 99 ¶ 141. Within the next two weeks, Cyberonics executives sold more than $17.4 million of stock. *Id.*

---

he stated in his letter the exact reason for his departure—an unhappiness with CEO compensation and succession.

at ¶ 143. Cummins—the CEO—personally sold $14.7 million of stock.[9] *Id.* The plaintiffs allege that all the while the executives knew full well that the VNS Device would run into trouble with the payers, causing the stock to drop again. *Id.* at ¶ 142. Evidence indicating motive and opportunity, without more, is insufficient for a strong inference of scienter. *Goldstein v. MCI WorldCom*, 340 F.3d 238, 246 (5th Cir. 2003). As with their consolidated complaint, the plaintiffs "rely on the stock transactions of the individual defendants as their only circumstantial evidence that is remotely probative."[10] Dkt. 51 at 16. And, as with their consolidated complaint, this evidence is insufficient. *Id.*

    3.    Certifications

The plaintiffs point to the certifications made by the CEO and CFO for Cyberonics' 10-K. However, any certifications under Sarbanes-Oxley made by defendants do not rise to a strong inference of scienter. As plaintiffs again have failed to link these certifications to the alleged fraud with the particularity required, the allegation that the certifications were false are merely conclusory. It simply is not enough to argue that defendants must have known of the fraud given their positions.

The plaintiffs have drawn some level of inference regarding scienter. But, the inferences do not rise to the exacting level demanded by Congress. Taken as a whole, the court cannot find that the inferences drawn by the plaintiffs are at least as strong as the plausible non-culpable alternatives. Therefore, the plaintiffs' claims under the PSLRA must fail.

---

[9] Notably, Cummins only sold approximately 32% of his stock.

[10] This court also agrees with defendants that stock sales by defendants Cheney, Jennings, and Rudolph are irrelevant, as they did not make any misstatement or omissions during the class period.

**C.     Section 20(a) Claim**

Along with the Rule 10b-5 claim, plaintiffs allege that the individual defendants violated section 20(a) of the Exchange Act. 15 U.S.C. § 78t(a) (2002). Section 20(a) imposes control person liability on "[e]very person who, directly or indirectly, controls any person liable under any provision of this chapter." *Id*. However, section 20(a) liability may not be imposed unless there is an underlying violation of the Securities Exchange Act. *See* 15 U.S.C. § 78t(a); *Dennis v. General Imaging, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990). Because there is no viable underlying violation alleged against the individual defendants, the derivative section 20(a) claim for controlling person liability also must fail.

**D.     Supplemental Pleading**

Under Fed R. Civ. P. 15(d), the court may permit a "party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." FED. R. CIV. P. 15(d); *Burns v. Exxon Corp.*, 158 F.3d 336 (5th Cir. 1998). Rule 15(d) is intended to give the court broad discretion in allowing a supplemental pleading. *See* FED. R. CIV. P. 15(d), Advisory Committee Notes to the 1963 Amendment. The court asked for a supplemented, not an amended, complaint in its order lifting the stay. Dkt. 95. However, because the court finds that the plaintiffs' SFAC is insufficient regardless of whether it is an "amended" complaint or a "supplemented" complaint, the distinction is moot.

**III.    CONCLUSION**

In the PSLRA, Congress set the bar for pleading very high. The Supreme Court in *Tellabs* clarified the strength needed for a strong inference. Under these guidelines, the plaintiffs' SFAC falls short. Accordingly, for the foregoing reasons, defendants' motion to dismiss plaintiffs'

supplemented first amended complaint is GRANTED.  Accordingly, plaintiffs' claims are hereby DISMISSED WITH PREJUDICE.

It is so ORDERED.

Signed at Houston, Texas on October 4, 2007.

_____
Gray H. Miller
United States District Judge